IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARICA DURKOT                           :         CIVIL ACTION
                                        :
        v.                              :
                                        :         NO.   08-4538
TESCO EQUIPMENT, LLC



_____MEMORANDUM AND ORDER_____

JACOB P.  HART                                DATE: September 9, 2009
UNITED STATES MAGISTRATE JUDGE

        Plaintiff Marcia Durkot filed this action in the Philadelphia Court of Common Pleas on

August 22, 2008, seeking damages for injuries she sustained on September 27, 2006, while

working as a catering agent for U.S. Air at the Philadelphia International Airport.  Plaintiff

sustained her injury while using a catering lift truck manufactured by Defendant TESCO. The

action was removed to this Court based on diversity jurisdiction.  Defense Counsel for TESCO

submitted a letter to the Court on July 15, 2009, asking for guidance as to which Restatement

will be applied in this case and Plaintiff's counsel issued a response.  After a telephone

conference regarding this issue, Defendant has now filed a Memorandum of Law in Support of

the Application of Restatement (Third) of Torts: Products Liability §§ 1 and 2, to which Plaintiff

has filed opposition.  As explained below, Defendant's Application will be denied.

I.      Factual Background

        Plaintiff was employed by US Air for 18 years and worked as a catering agent for over

seven years, including the 2 3/4 years she had been working at the Philadelphia International

airport.  The TESCO catering lift truck Plaintiff was operating when she was injured was

delivered to US Air's PHL ground support equipment department in approximately mid-August

2006.  It was identified by US Air as vehicle FL-211.  The vehicle was built with "a scissors-lift

mechanism which is mounted to a rear chassis of a truck, and used to raise the van body, or

catering lift box to the height desired by the operator.  The lift-boxes on catering trucks,

including Truck FL-211, are raised and lowered from inside the lift-box, by one of the catering

agents' use of the control buttons located in the 'front' or plane-side of the catering lift box, near

the front door of the lift-box, from which a built in ramp extends to provide a walk-way into the

side door of the aircraft.  The catering agent operating the lift mechanism is required to

continuously hold down two buttons to raise the catering lift box until it reaches its desired

height.  The agent is likewise required to continuously depress the single 'down' button in order

to lower the lift-box."

Defendant notes that according to John Yutzy, US Air's Regional Safety Manager at the

time of the incident, US Air required the rear doors of the catering truck to remain closed

whenever the lift box was being raised or lowered to provide fall protection for the employees

and equipment inside the box and failure to do so was grounds for discipline.  According to

Defendant, on the day of the incident, Plaintiff opened the rear door of the catering lift truck

while the box was still descending and started to exit before the box reached its full rest position.

According to Plaintiff, this was the first day using a TESCO lift for both her and her co-worker.

Her co-worker was the one operating the controls of the lift and she believed the truck had been

completely lowered before she opened the door and began to exit.  The parties agree that she

stepped down on the lower frame of the scissors lift assembly, believing she was stepping onto

one of the steps built into the truck's bumper.  As the lift continued its descent, her left foot

became entrapped between the upper and lower frame of the scissors lift assembly, causing her

foot to be crushed as the lift lowered.  Plaintiff required amputation of the great toe and second

toes of her left foot.

      Plaintiff's Product Liability Claim:

      Defendant anticipates that Plaintiff's strict liability claim will allege that the catering

truck was defectively designed because it does not protect a user from inadvertently getting

caught in the "pinch point" created by the gap between the upper and lower frame of the scissor

lift mechanism, any time the lift-box is raised above its full rest position.  TESCO denies that the

truck was defectively designed.  TESCO's operation and maintenance manual warns users that

the lift trucks should only be operated by trained personnel.  Defendant argues that when the

truck was sent to the airport TESCO sent representatives to train US Air's catering personnel in

proper use of the vehicle, which would include keeping the rear door closed any time the lift box

is raised from the full rest position.  TESCO argues that Plaintiff's injuries are a result of her

failure to follow TESCO's recommended procedures and US Air's policies, by exiting the

vehicle while it was not in full rest position.

II.    Discussion

      In a diversity case, such as this, a federal district court is required to apply the law of the

state in which the claim arose.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

The parties agree that Pennsylvania law is to be applied in this case.

      The Pennsylvania Supreme Court adopted Section 402A of the Restatement (Second) of

Torts in Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966).  Since that time, the Court has

interpreted the section, leaving Pennsylvania strict liability law unclear in certain areas. Specifically, there has been some confusion as to the extent that negligence principles, such as reasonableness are to be considered by the jury.  See Azzarello v. Black Brothers Co., Inc., 391 A.2d 1020, (Pa. 1978).

In Berrier v. Simplicity Manufacturing, Inc., 563 F.3d 38 (3d Cir. 2009), the Third Circuit predicted that the Pennsylvania Supreme Court would adopt the Third Restatement.  In Berrier, the plaintiffs sought damages for injuries sustained by a minor when her grandfather was operating a riding lawnmower and backed over her leg while the mower blades were engaged. The District Court had granted summary judgment in favor of the defendant, finding that under Pennsylvania strict products liability law, recovery was not permitted by anyone other than the intended user of the product.  After finding that there were no Pennsylvania Supreme Court decisions addressing the specific issue of a manufacturer's liability for injuries sustained by a bystander, the Third Circuit made a prediction as to how the Pennsylvania Supreme Court would decide that issue.   The Third Circuit noted that the Pennsylvania Supreme Court had just recently granted a petition for allowance of appeal in Bugosh v. I.U. North America Inc., 942 A.2d 897 (2008) and had framed the issue as "whether this Court should apply § 2 of the Restatement (Third) of Torts in place of 402A of the Restatement (Second) of Torts."  Berrier, 563 F.3d at 57.  The Third Circuit relied upon Justice Saylor's concurring opinion in Phillips v. Cricket Lighters, 841 A.2d 1000 (Pa. 2003), speculating that there would be enough votes on the court to adopt the Restatement (Third) in Bugosh.

However, after hearing extensive oral argument in Bugosh, the Pennsylvania Supreme Court declined to adopt the Restatement (Third).  Instead, the Court dismissed the appeal as

improvidently granted.  Bugosh v. I.U. North America, Inc., 971 A.2d 1228, 1229 (Pa. 2009).

Defendant urges this Court to apply the Restatement (Third) because it claims that the Third Circuit's prediction in Berrier is precedential and binding upon this Court.   Plaintiff urges the Court to apply Section 402(a) of the Restatement (Second).  Plaintiff argues that the Third Circuit's prediction was based upon the specific facts of Berrier, i.e. liability to a bystander, which is not at issue in this case.  Furthermore, plaintiff argues that since the Pennsylvania Supreme Court declined to adopt the Restatement Third in Bugosh, the Third Circuit's prediction did not hold true and is not binding upon this court.

The federal court may not impose its view of what the state law should be, but must apply existing state law as interpreted by the state's highest court in an effort to determine how the state court would decide the precise legal issue before the federal court.  Koppers Co., Inc. v. Aetna Casualty and Surety Co., 98 F.3d 1440, 1445 (3d Cir.1996).  "[W]here a federal court of appeals in a given case has ascertained and applied what it apprehends to be the pertinent state law, such ascertainment of the local law is binding upon the trial court *at the retrial of the case* unless it is clearly made to appear by subsequent statute, no more than declaratory, or by binding state court decision that the law of the state was other than what the federal appellate court had understood it to be."  Lennig v. New York Life Ins. Co., 130 F.2d 580, 581 (3d Cir. 1942) (emphasis added).  The Third Circuit has not made it entirely clear when its predictions are binding upon the district court.  See Carrasquilla v. Mazda Motor Corp., 197 F. Supp. 2d 169, 173 (M.D. Pa. 2002) ("The Third Circuit has not given very much guidance on the subject, but has suggested that the only law binding on a federal court is the jurisprudence of the state supreme court, and that even a decision by a federal court of appeals does not bind a district court."); see also Hollingsworth v.

State Farm Fire & Cas. Co., 2005 WL 563414, * 6 (E.D. Pa. March 9, 2005) (stating that the court "need not consider the debatable question of whether a federal district court is strictly bound by its court of appeals' prediction of state law").  However, it is clear that the district court is no longer bound by a court of appeals' prediction of state law once "later state court decisions indicate that the Court of Appeals' earlier prediction was in error".  Stepanuk v. State Farm Mut. Auto. Ins. Co., Civ. A. No. 92-6095, 1995 WL 553010, at *2 (E.D. Pa. Sept.19, 1995).

First, this is not a retrial, but is an entirely separate case from that in which the Third Circuit made its prediction of state law.  We also agree that this case is factually different from Berrier in that it involves a user of the product and not a bystander[1].  Furthermore, we note that by applying the Restatement (Third) in this case, even after the Pennsylvania Supreme Court has declined to change the law as the Third Circuit predicted, we would be applying a different standard than would be applied in state court.  As Plaintiff argues, "adoption of defendant's position will lead to citizens of Pennsylvania receiving disparate treatment of their Pennsylvania product liability actions depending on whether they are in state or federal court."  (Plaintiff's Response at p. 6).  This is completely contrary to the principles of federalism.

Most significantly, we find that the Third Circuit's prediction as to the Pennsylvania

---

[1] We agree with Plaintiff that the present case does not involve "the precise legal issue" involved in Berrier because it involves a user of the product rather than a bystander. However, it is not on this basis that we find that we are not bound by Berrier.  As Judge Golden noted in Richetta v. Stanley Fastening Systems, Bugosh, the case in which the question had been certified and in which the Third Circuit predicted that Pennsylvania would actually adopt the Restatement (Third) also did not involve liability as to a bystander.  As Judge Golden notes, the Third Circuit also relied upon Justice Saylor's dissent in Phillips, yet another case which did not involve liability as to a bystander.  Finally, we also acknowledge that the Third Circuit indicated that although the question that was certified in Bugosh was whether Pennsylvania would adopt section 2 of the Restatement (Third), "we think it highly likely that the Justices who would adopt section 2 would adopt as well ... section 1 rather than trying to parse the applicable provisions of the Third Restatement and thereby supplant some of the Second Restatement and not others."  Berrier, 563 F.3d at 63; Richetta, 2009 WL 2707549 at *3 (quoting Berrier).  We agree with Judge Golden that the Third Circuit's prediction, while made in a case involving liability as to a bystander, was that Pennsylvania would adopt the Third Restatement in its entirety, replacing the Second Restatement, not simply as to bystander liability.  See Richetta, 2009 WL 2707549 at * 3.

Supreme Court's adopting the Restatement Third simply did not hold true.  When presented with the opportunity to adopt the Restatement (Third), even after granting the appeal on that precise issue and hearing extensive oral argument, the Court did not take the opportunity to do so.  We acknowledge that the Court also did not specifically reaffirm the existing law.  However, by failing to take action, contrary to the Third Circuit's prediction, Section 402(a) of the Restatement (Second) remains the law in Pennsylvania.  This issue has very recently been considered by Judge Golden in Richetta v. Stanley Fastening Systems, Civ. A. No. 07-3814, 2009 WL 2707549 (E.D. Pa. Aug. 25, 2009).  Contrary to Judge Golden's findings in Richetta, we find that Berrier's prediction that a majority of the Justices of the Pennsylvania Supreme Court would adopt the Third Restatement is now invalid.  While it is true that the reasoning behind the Pennsylvania Supreme Court's decision in Bugosh cannot be known, it is evident that the justices were not in agreement to adopt the Restatement Third in that case.

The Bugosh appeal was originally granted for the specific purpose of deciding if Pennsylvania would adopt the Restatement (Third) and get rid of the Restatement (Second), along with Azarello and its progeny.  For this appeal to be dismissed as improvidently granted cannot be looked at as the fundamental equivalent of a simple allocatur denied.  By dismissing the appeal in Bugosh the Pennsylvania Supreme Court obviously decided not to throw out the Restatement (Second) and Azzarello.  Justice Saylor's lengthy dissent makes this obvious. The Court's dismissal of the appeal as improvidently granted did not include any reasoning as to why the Pennsylvania Supreme Court did not either adopt the Restatement (Third) or specifically reaffirm the existing Pennsylvania law.  However, the law was not changed, as the Third Circuit predicted it would be.  In his dissent, Justice Saylor hints at possible explanations, and also

possible alternatives other than the adoption of the Restatement (Third).  Justice Saylor's

problems are not with Section 402(a), but rather with the way the section has been interpreted,

specifically in Azzarello.  See Bugosh, 971 A.2d at 1233 (Saylor, J., dissent) ("[T]he core

problem in the application of prevailing Pennsylvania law lies in the insistence on maintaining a

doctrinal assertion that there is no negligence in strict liability, when functionally, the law of

'strict' products liability is infused with negligence concepts.").   Some of the possible reasons

for the court's failure to adopt the Restatement Third in Bugosh may have been that they simply

did not have enough votes or that they did not feel that it was the appropriate case.  However,

especially given the possible alternatives discussed by Justice Saylor, including overruling

Azarello without adopting the Restatement (Third), it is not at all clear that the Pennsylvania

Supreme Court will adopt the Restatement Third even at some point in the future, especially in

its entirety as predicted by the Third Circuit.  See Bugosh, 971 A.2d at 1241 (Saylor, J., dissent)

("To the degree a majority of the Court is not comfortable adopting the whole of Section 2 in this

case, there are other alternatives to leaving Azarello in place while the Court continues to search

for the perfect vehicle in which to devise a replacement scheme").

        Moreover, it is clear from the opinion in Berrier that our Court of Appeals fully expected

that Pennsylvania's elimination of the Restatement Second and its replacement with the

Restatement Third would occur in the Bugosh decision.  The Third Circuit considered the fact

that the Pennsylvania Supreme Court had certified the question in Bugosh as part of its basis for

its prediction in Berrier.  Unfortunately, the prediction did not occur.  After Bugosh, the

Restatement (Second) remains the law in Pennsylvania.

        Finally, Judge Golden relies upon the case of Commonwealth v. Tilghman, 673 A.2d 898

(Pa. 1996), finding that the Pennsylvania Supreme Court's dismissal of the appeal in Bugosh as improvidently granted had no effect on Berrier because the effect of an appeal being dismissed as improvidently granted is the same as if the Court had denied allocatur. See Richetta, 2009 WL 2707549 at *4. We disagree, especially as it pertains to this case. First, the Pennsylvania Supreme Court's discussion in Commonwealth v. Tilghman, of the effect of an order dismissing an appeal as improvidently granted is entirely dicta. The issue in Tilghman was only the precedential value, vel non of per curiam affirmances or reversals. The case did not involve any order dismissing an appeal as improvidently granted. In addition, while it is true that an appeal being dismissed as improvidently granted does not have any impact on that particular case, we find the Pennsylvania Supreme Court's dismissal in the instant case completely contrary to the Third Circuit's prediction in Berrier.

The fact that the Third Circuit's prediction did not hold true is in no way a criticism of the Third Circuit or its well reasoned decision in Berrier. Despite its expertise and careful examination of the state law, this is not the first time one of its predictions as to state law did not hold true. Judge Sloviter recognized in a law review article that "[d]espite [the Third Circuit's] best efforts to predict the future thinking of the state supreme court's within [their] jurisdiction on the basis of all available data, [they] have guessed wrong on questions of the breadth of arbitration clauses in automobile insurance policies (we predicted they would not extend to disputes over the entitlement to coverage, but they do), the availability of loss of consortium damages for unmarried cohabitants (we predicted they would be available , but they are not), the 'unreasonably dangerous' standard in products liability cases (we predicted the Restatement would not apply, but it does), and the applicability of the 'discovery rule' to wrongful death and

survival actions (we predicted it would toll the statute of limitations, but it does not).  And this list is by no means exhaustive."  78 Va. L. Rev. 1671, 1679-80 (1992),  A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism, Dolores K. Sloviter.  The Pennsylvania Supreme Court's adoption of the Restatement (Third) is simply another issue that at this point should be included in this list.

In light of the fact that the Pennsylvania Supreme Court failed to adopt the Restatement (Third) when presented with the opportunity to do so in Bugosh as was predicted by the Third Circuit, we will apply Section 402(a) of the Restatement (Second), as it remains the law in Pennsylvania.  The Defendant's motion will therefore be denied.